IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARK CITY MINES and TALISKER FINANCE LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:17-cv-482-DB<br><br>District Judge Dee Benson |

Before the court are Defendants' Motion for Summary Judgment, (Dkt. No. 24,) and Plaintiff's Cross-Motion for Partial Summary Judgment. (Dkt. No. 26.) Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

Background

United Park City Mines Company ("UPCM") was formed in 1953 and conducted mining related operations in Park City until approximately 1969. (Compl. at ¶¶ 6, 22.) In the mid-1980s, the Environmental Protection Agency ("EPA") began its investigation of the site relevant to this action. (*Id.* at ¶ 22.) EPA found that the site was contaminated with mining waste. (*Id.* at ¶ 19.) EPA organized the relevant site into four operable units ("OUs") of concern, and designated those OUs as OU1, OU2, OU3, and OU4. (*Id.* at ¶ 17.) UPCM was an "owner or operator" of OU1, OU2, and OU3, within the meaning of section 101(2) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §

9604(e)(2). (*Id.* at ¶ 20.) UPCM and Talisker Finance, LLC ("Talisker") are corporate affiliates. (*Id.* at ¶ 10.) Each entity is a "person" within the meaning of Section 101(21) of CERCLA. (*Id.* at ¶¶ 7, 9.)

In 2000, EPA and UPCM entered into an Administrative Order on Consent ("AOC") that required UPCM to conduct a remedial investigation and feasibility study at OU1, which UPCM completed in 2004. (Compl. at ¶¶ 24-25.) In 2007, EPA and UPCM entered into a consent decree as to OU1, which required UPCM, among other things, to implement the Record of Decision issued by the EPA with respect to OU1, and contained provisions for financial assurance. (*Id.* at ¶ 27.)

In 2014, EPA and UPCM, along with other state and federal agencies, entered into an AOC for OU2 and OU3. (Compl. at ¶ 28.) That Order required UPCM to implement a work plan and a Site Characterization Report, perform an engineering evaluation and cost analysis, and implement the removal action selected by EPA. (*Id.*) It also contained provisions for financial assurance. (*Id.*)

Shortly following the 2014 AOC, UPCM failed to timely and adequately perform work and make payments required under the AOC. (Dkt. No. 26-1 at ¶ 23.) Due to these deficiencies, EPA took over a portion of the work under the 2014 AOC. (*Id.* at ¶ 24.) EPA expects to complete the engineering evaluation and cost analysis with respect to the sites within the next 12-18 months. (*Id.*) EPA must then choose a response action and whether to implement the response action itself or require that action to be carried out by UPCM. (*Id.*)

This is an action to enforce two requests for information issued by EPA pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). The first information request—issued to

UPCM on January 26, 2016—seeks information about UPCM's current and past financial position, as well as that of UPCM affiliates. The second information request was issued on September 12, 2016, to Talisker, and also seeks current and past financial information.

Discussion

42 U.S.C. § 9604(e)(2), part of CERCLA, provides in relevant part:

> Any officer, employee, or representative [duly designated by the President] may require any person who has or may have information relevant to any of the following to furnish, upon reasonable notice, information or documents relating to such matter:
> …
> **(C)** Information relating to the ability of a person to pay for or to perform a cleanup.

The statute further provides that this authority "may be exercised only for the purposes of determining the need for response, or choosing or taking any response action under this subchapter, or otherwise enforcing the provisions of this subchapter." 42 U.S.C. § 9604(e)(1). CERCLA requires the court to "direct compliance with the requests or orders to provide such information or documents unless under the circumstances of the case the demand for information or documents is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 9604(e)(5)(B)(ii).

With respect to the requests in question here, EPA has submitted a declaration affirming that the representatives who issued the requests were duly designated by the President, (Dkt. No. 26-2,) and Defendants have not provided any evidence to the contrary. It is also undisputed that both UPCM and Talisker have information regarding their financial position and ability to pay for a cleanup of the sites. The financial information requested, including historical financial

transactions and the financial position of affiliated entities, is also relevant to Defendants' current ability to pay for a cleanup.

Defendants argue, however, that the requests were not made for a purpose authorized by CERCLA because the parties had already entered into an AOC with financial assurances prior to the issuance of the requests. EPA asserts that it issued the requests to assist it in choosing a response action and whether to carry out that action itself or to require UPCM to implement the action. The statutory language of CERCLA, which allows information requests for the purpose of "determining the need for response, or choosing or taking any response action under this subchapter, or otherwise enforcing the provisions of this subchapter" is broad, and is not limited to a specific stage of the cleanup process. 42 U.S.C. § 9604(e)(1). The requests here fall within the statutory authorization of CERCLA and are consistent with the enumerated purposes of the Act.

Defendants further argue that the 2014 AOC stripped EPA of its authority to seek information as described in CERCLA, because the AOC contained specific provisions related to information access and financial assurances. The AOC does not contain any express relinquishment of rights under CERCLA. And it specifically provides that "nothing in this Settlement Agreement shall prevent the Environmental Agencies from seeking legal or equitable relief to enforce the terms of this Settlement Agreement, from taking other legal or equitable action as it deems appropriate and necessary, or from requiring UPCM in the future to perform additional activities pursuant to CERCLA or any other applicable law." (Dkt. No. 24-1 at ¶ 106.) The 2014 AOC does not override or waive the rights to seek information granted to EPA in CERCLA.

Defendants also argue that the court should not direct compliance with the requests for information because they contravene the Fourth Amendment because 1) they are not consistent with CERCLA's purpose and 2) the requests failed to identify the purposes now asserted by the EPA. Even assuming the Fourth Amendment applies in this context, EPA's requests do not violate it.

The Supreme Court, in evaluating corporate defendants' Fourth Amendment objections to agency subpoenas for records and books have found the requests "sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S. Ct. 357, 369, 94 L. Ed. 401 (1950). As discussed above, the requests issued were within the authority granted to EPA under CERCLA. The requests were also reasonably specific with respect to time and subject matter. And the financial information sought regarding Talisker, UPCM, and affiliated entities is relevant to the ability of UPCM to pay for a cleanup of the sites at issue. Accordingly, the requests did not violate the Fourth Amendment.

CERCLA instructs the court to "direct compliance with the requests or orders to provide such information or documents unless under the circumstances of the case the demand for information or documents is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 9604(e)(5)(B)(ii). The court finds no abuse of discretion or arbitrary and capricious action by EPA, nor were the requests issued in contravention of the law. Accordingly, the court hereby orders compliance with the requests.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED, Plaintiff's Motion for Partial Summary Judgment is GRANTED, and Defendants are directed to comply with the requests for information issued by EPA within 30 days of the date of this Order.

DATED this 6th day of July, 2018.

BY THE COURT:

Dee Benson
United States District Judge