MARK C. ELMER
ALEXANDRA B. SHERERTZ
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1352
Mark.Elmer@usdoj.gov
Alexandra.Sherertz@usdoj.gov

*Attorneys for Plaintiff United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-CV-00482-TC |
| Plaintiff, | **UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE UNREASONABLENESS OF DEFENDANTS' NONCOMPLIANCE WITH EPA'S REQUESTS FOR INFORMATION** |
| v. | |
| UNITED PARK CITY MINES COMPANY and TALISKER FINANCE LLC, | |
| Defendants. | Judge Tena Campbell |
| | **REDACTED VERSION** |

**TABLE OF CONTENTS**

LIST OF ACRONYMS ........................................................................................................ iii

I. INTRODUCTION AND RELIEF SOUGHT ........................................................... 1

II. BACKGROUND .................................................................................................... 2

    A.  UPCM's Corporate Background and Site Liability ..................................... 2

    B.  The 104(e) Requests to UPCM and Talisker ............................................... 3

III.      STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................... 5

    The Information Request to UPCM ...................................................................... 5

    UPCM's Response to the Information Request .................................................... 6

    UPCM's Supplemental Responses to the Information Request ........................... 9

    Present Litigation and UPCM's Further Responses to the Information Request ..................... 13

    The Information Request to Talisker Finance ...................................................... 16

    Talisker Finance's Response to the Information Request .................................... 18

    Talisker Finance's Supplemental Responses to the Information Request ............... 21

IV.      STANDARD OF REVIEW .................................................................................. 23

V. ARGUMENT ........................................................................................................ 24

    A.  Defendants' Noncompliance with EPA's 104(e) Requests was Unreasonable as a
        Matter of Law. ................................................................................................ 24

        1.  UPCM's Noncompliance with the 104(e) Request was Unreasonable as a Matter
            of Law. ...................................................................................................... 26

        2.  Talisker Finance's Noncompliance With the 104(e) Request was Unreasonable
            as a Matter of Law. .................................................................................... 35

VI.      CONCLUSION ...................................................................................................... 39

# TABLE OF AUTHORITIES

Cases

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) ............................................ 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) .................................................... 24

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................................... 24

*United States v. Barkman*, 784 F. Supp. 1181, 1186 n.3 (E.D. Pa. 1992) .............................. 26, 27

*United States v. Ponderosa Fibres of Am., Inc.*, 178 F. Supp. 2d 157, 161 (N.D.N.Y 2001) . 4, 25, 26

*United States v. Pretty Products, Inc.*, 780 F. Supp. 1488, 1507 (S.D. Ohio 1991) .................... 32

*United States v. Timmons Corp.*, No. CIV103CV00951RFT, 2006 WL 314457, at *14 (N.D.N.Y Feb. 8, 2006) ................................................................................................................. passim

Statutes

42 U.S.C. § 9604(e) ............................................................................................................. passim

Rules

Fed. R. Civ. P. 56(c) ................................................................................................................ 25

**LIST OF ACRONYMS**

| | |
|---|---|
| AOC | Administrative Order on Consent |
| CERCLA | Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et. seq. |
| CGP | Capital Growth Partners LLC |
| EPA | U.S. Environmental Protection Agency |
| MDII | Mountain Developments I, Inc. |
| OU | Operable Unit |
| Talisker Finance | Defendant Talisker Finance LLC |
| TDHGP | Talisker Development Holding General Partnership |
| TEPH | Talisker Empire Pass Hotel LLC |
| UPCM | Defendant United Park City Mines Company |

## I.   INTRODUCTION AND RELIEF SOUGHT

Defendants UPCM and Talisker Finance failed to comply with requests for information issued by EPA pursuant to Section 104(e) of CERCLA (commonly known as "104(e) requests"), seeking information and documents relating to UPCM's ability to pay for the cleanup of mining waste and other contamination in and around Park City, Utah. Aside from a dispute about the scope of questions concerning affiliates, which is the subject of a "motion for clarification" recently filed by Defendants, the only remaining issue is whether civil penalties should be imposed for Defendants' admitted noncompliance and, if so, in what amount. The first part of this question – whether penalties should be imposed – turns on whether Defendants' noncompliance was "unreasonable." CERCLA Section 104(e)(5), 42 U.S.C. § 9604(e)(5), ("The Court may assess a civil penalty . . . for each day of noncompliance against any person who unreasonably fails to comply with the provisions of [section 104(e)(2), (3), or (4)]").

This motion asks the Court to find that Defendants' established noncompliance with the 104(e) requests was unreasonable as a matter of law. There is no genuine dispute that Defendants' responses to the 104(e) requests were late. This makes Defendants' noncompliance presumptively unreasonable, and Defendants have no reasonable excuse that can overcome this presumption. Given the length of delay in this case, nearly 2,000 days and counting, the Court should find, as other courts have done in similar circumstances, that Defendants' noncompliance is per se unreasonable. Moreover, the undisputed facts demonstrate that Defendants' responses were (and still are) incomplete and, in some cases, materially false, which also makes their noncompliance unreasonable as a matter of law.

If this motion is granted, the sole issue for trial would be the amount of civil penalties Defendants should pay for their unreasonable noncompliance with the 104(e) requests.

## II.      BACKGROUND

### A.      UPCM's Corporate Background and Site Liability

UPCM's corporate predecessors operated mining properties in the Park City area from the 1870s until 1953, when UPCM was formed by the consolidation of Park Utah Consolidated Mines Company and Silver King Coalition Mines Company. UPCM continued the principal business of its predecessors until 1982, mining lead, zinc, silver, gold and copper ores from its Park City properties.[1] In 1982, active mining in the area ceased, when it became unprofitable, and since then UPCM's primary business has been real estate development.

Talisker Investments (Canada) Inc. ("Talisker") is a privately held Canadian company with numerous direct and indirect subsidiaries. In 2003, one of those indirect subsidiaries, Capital Growth Partners ("CGP"), purchased UPCM.

At the time of its acquisition, UPCM owned thousands of acres of patented mining claims, including land on which the Park City Ski Resort operates (referred to as the "PCMR lands") and land in Empire Canyon on which the Montage hotel was later built. Following its acquisition, the PCMR lands and the Montage property were transferred to other Talisker affiliates.

UPCM's remaining property was then pledged to secure a $150 million loan from Wells Fargo to Talisker Finance (the "Wells Fargo loan"). According to information provided by

---

[1] UPCM leased its mining properties to others from approximately 1970 to 1982.

UPCM, ███████████████████████████████████████████████

███████. *See* Appx. Ex. 16 at UPCM000963. Proceeds from the Wells Fargo loan were to be

lent by Talisker Finance to UPCM and other Talisker affiliates. It is uncertain how much of the

proceeds were, in fact, lent to UPCM or how they were used by UPCM.

In 2014, UPCM entered into an administrative order on consent with EPA (the "2014

AOC"), which required UPCM to clean up OUs 2 and 3 at the Richardson Flat Tailings Site and

to pay EPA's future response costs. UPCM estimated that the cost to cleanup OUs 2 and 3 would

exceed $30 million. Appx. Ex. 33 (Gee AOC Dep.) 144:22-145:3. In 2015, UPCM entered

another administrative order on consent with EPA (the "2015 AOC"), which required UPCM to

implement erosion control features and manage contaminated material at and from the Uintah

Mining District Site and to pay EPA's future response costs.

Talisker Finance failed to repay the Wells Fargo loan, so in 2015 a judgment and decree

of foreclosure was entered, authorizing the foreclosure and sale of the real property securing the

loan (including the property pledged by UPCM) and providing for judgment against Talisker

Finance in an amount exceeding $165 million. On October 29 and November 17, 2015, property

securing the loan was sold at public auction for a total of $70 million (in the form of two credit

bids). *See* Appx. Ex. 16 at UPCM001091-1092, UPCM001079-1080.

### B.     The 104(e) Requests to UPCM and Talisker

In 2016, EPA issued separate requests to Defendants pursuant to CERCLA Section

104(e), 42 U.S.C. § 9604(e),which sought information and documents relating to UPCM's ability

to pay for the cleanup of sites contaminated with mining waste in and around Park City, Utah.

When Defendants failed to comply with these requests, the Government filed this action. On July

9, 2018, the Court granted the Government's motion for summary judgment, finding that the Government had established the elements necessary to prove Defendants' CERCLA Section 104(e) liability for failure to comply with the 104(e) requests. ECF No. 43. Defendants appealed, and the Tenth Circuit affirmed. ECF No. 54.

At this point, there is only one issue remaining, with two parts.[2] The first part is whether civil penalties should be imposed for Defendants' non-compliance. This turns on "the reasonableness of the failure to comply with [the] Information Request[s]." *United States v. Ponderosa Fibres of Am., Inc.*, 178 F. Supp. 2d 157, 161 (N.D.N.Y 2001); 42 U.S.C. § 9604(e)(5) (authorizing assessment of civil penalties "against any person who unreasonably fails to comply" with a 104(e) request). This motion seeks a determination that Defendants' noncompliance with the 104(e) requests was unreasonable as a matter of law. The second part, which is not addressed in this motion, concerns the appropriate amount of civil penalties.

If this motion is granted, the United States will present evidence and argument at trial on the five factors that courts typically consider when determining the amount of civil penalties for noncompliance with 104(e) requests.[3]

---

[2] As noted earlier, there is also a question about the scope of requests involving affiliates. That question is the subject of a pending "motion for clarification," ECF No. 67, recently filed by Defendants.

[3] To determine the amount of penalties, courts typically consider: (1) defendant's good or bad faith, (2) injury to the public, (3) defendant's ability to pay, (4) the desire to eliminate the benefit derived by the violation, and (5) the necessity of vindicating the authority of the enforcing agency. *United States v. Timmons Corp.*, No. CIV103CV00951RFT, 2006 WL 314457, at *14 (N.D.N.Y Feb. 8, 2006) (citing *Martin*, 99 C 1130, 2000 WL 1029188, at *8).

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS[4]

#### The Information Request to UPCM

1.      On January 26, 2016, EPA sent UPCM a request for information pursuant to

CERCLA Section 104(e), 42 U.S.C. § 9604(e). Appx. Ex. 1 (UPCM 104(e) Request).

2.      The request contained 20 separately numbered questions. *Id.* at UPCM001948-50.

3.      UPCM received the request on February 1, 2016. ECF No. 15 at ¶¶ 33-34

(admitting that "on or about February 1, 2016, it received a letter from EPA dated January 26,

2016 ("Letter") requesting certain information"); Appx. Ex. 32 (Gee 104(e) Dep.) 61:12-62:25.

4.      UPCM's attorney, Kevin Murray, received an email copy of the request on

January 27, 2016. Appx. Ex. 2. Mr. Murray is a partner at Holland & Hart in Salt Lake City.

According to his biography, he "has significant experience with CERCLA, RCRA, state

hazardous waste laws, and related programs." https://www.hollandhart.com/krmurray#overview

(last accessed July 21, 2021).

5.      UPCM was required to provide a complete and truthful response to the request,

accompanied by a notarized certificate, by March 2, 2016 (i.e. within 30 days of receipt). Appx.

Ex. 1 (UPCM 104(e) Request) at UPCM001943.

6.      The request noted that a "[f]ailure to respond fully and truthfully, or to adequately

justify your failure to respond, can result in an enforcement action by the EPA, pursuant to

section 104(e) of CERCLA and the imposition of penalties of up to $37,500 per day of non-

compliance." Appx. Ex. 1 (UPCM 104(e) Request) at UPCM001943.

---

[4] The Parties have stipulated to the authenticity of exhibits 1 through 31. *See* ECF No. 71.

7.      UPCM was encouraged to give the request its "immediate attention and respond to the Information Request within the time specified above." Appx. Ex. 1 (UPCM 104(e) Request) at UPCM001944. UPCM was advised that if it had any questions relating to the request to contact EPA. *Id.*

### UPCM's Response to the Information Request

8.      On February 19, 2016, UPCM wrote to EPA, asking EPA to "suspend any current process or proceeding" involving the 104(e) request. Appx. Ex. 3.

9.      After being told that EPA would not abandon the 104(e) request (Appx. Ex. 4), on March 18, 2016 (16 days *after* the initial deadline), UPCM requested a 60-day extension to respond to the 104(e) request. Appx. Ex. 5. On March 25, 2016, EPA granted UPCM's request, extending the deadline to respond to May 2, 2016. Appx. Ex. 6 at UPCM000690.

10.     On April 4, 2016, UPCM requested a meeting with EPA on May 18 to present and discuss a "business plan." Appx. Ex. 7. EPA responded to this request on April 13, 2016. Appx. Ex. 8

11.     UPCM provided a response to the 104(e) request, dated May 2, 2016 (91 days after the request was received by UPCM) (the "May 2 Response"). Appx. Ex. 9.

12.     The May 2 Response was signed by Kerry Gee, a long-time UPCM employee with past experience responding to EPA 104(e) requests and since approximately 2016 UPCM's only regular employee. Appx. Ex. 32 (Gee 104(e) Dep.) 82:19-83:1; 24:16-12; 35:12-17; 66:3-6.

13.     In its May 2 response, UPCM called the 104(e) request "an unnecessary diversion of time and resources better spent in furtherance of the environmental work UPCM continues to perform under the AOCs." Appx. Ex. 9 (May 2 Response) at UPCM000699.

14.     UPCM did not identify or produce a single document in its May 2 response. *See* Appx. Ex. 9 (May 2 Response); Appx. Ex. 32 (Gee 104(e) Dep.) 85:24-86:11.

15.     UPCM refused to answer Questions 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, and 20, asserting objections instead.[5] *See* Appx. Ex. 9 (May 2 Response) at UPCM000703-708.

16.     UPCM's answer to Question 4 was "See responses to Requests below," falsely implying that it had identified documents "consulted, examined, or referred to in the preparation of [its] answer or that contains information, responsive to the question." Appx. Ex. 9 (May 2 Response) at UPCM000702-703; Appx. Ex. 32 (Gee 104(e) Dep.) 90:5-23.

17.     UPCM objected to Question 5, which sought copies of tax returns and work papers, claiming the question was "vague and ambiguous" and that tax returns and work papers were "not relevant to UPCM's ability to pay." Appx. Ex. 9 (May 2 Response) at UPCM000703.

18.     Mr. Gee testified that when he received the 104(e) request he did not think Question 5 was vague. He agreed that tax returns would be relevant to the ability of a person to pay for a cleanup, and he did not know why the tax returns were not provided in UPCM's response. Appx. Ex. 32 (Gee 104(e) Dep.) 90:24-92:6.

19.     UPCM provided a brief answer to a portion of Question 6, which asked UPCM to describe its corporate history. Despite being so general that even UPCM's authorized representative did not believe it was what EPA was looking for, Appx. Ex. 32 (Gee 104(e) Dep.)

_____

[5] In its May 2 Response, UPCM did not answer Question 18, which requested copies of all settlement agreements identified in response to Question 17, though this appears to have been inadvertent. UPCM instead mis-numbered Question 19 as Question 18 and Question 20 as Question 19. *Compare* Appx. Ex. 1 (UPCM 104(e) Request) at UPCM001950 *with* Appx. Ex. 9 (May 2 Response) at UPCM000707-708.

93:1-94:6, the answer still contained a false statement. In the answer, UPCM said it "was

acquired by Talisker in 2003." Appx. Ex. 9 (May 2 Response) at UPCM000704. But UPCM was

not acquired by Talisker Finance (which is how Talisker is defined in the 104(e) request). Ex. 1

(UPCM 104(e) Request) at UPCM001946. It was acquired by CGP, another Talisker subsidiary.

Appx. Ex. 25 at US_0000279. When UPCM provided its May 2 response, it knew that UPCM

had been acquired by CGP, not Talisker Finance. Appx. Ex. 34 (Smith Dep.) 134:6-137:1, 143:5-

7.

20.     UPCM refused to provide any documents in response to Question 6, claiming

they were not relevant to its ability to pay. Appx. Ex. 9 (May 2 Response) at UPCM000703.

21.     UPCM refused to provide any information or documents in response to Question

7, which seeks information about transfers between UPCM and its affiliates, claiming the request

was vague, overly broad, and not relevant to UPCM's ability to pay. Appx. Ex. 9 (May 2

Response) at UPCM000704. Notably, UPCM did not object to the defined term "Talisker

Affiliate," used in Question 7, but did claim responding to the question would be unduly

burdensome. *Id.*

22.     UPCM refused to provide any documents in response to Question 8, which seeks

various financial documents for the past five years, such as financial statements and financial

information provided to UPCM or from UPCM to its affiliates in the normal course of business,

claiming the request "exceeds EPA's investigatory powers under CERCLA § 104(e)." Appx. Ex.

9 (May 2 Response) at UPCM000704. Rather than provide the information and documents EPA

requested, UPCM indicated that it would later "provide information regarding the ability of

UPCM to pay for or perform the work, which should address the practical function of this Request." *Id.*

23.     UPCM's response was not accompanied by a notarized certificate, as required by the 104(e) request. *Compare* Appx. Ex. 1 (UPCM 104(e) Request) at UPCM001943-1944 (describing requirements for notarized certificate) *with* Appx. Ex. 9 (May 2 Response) at UPCM000709 (the actual "Statement of Certification" accompanying UPCM's response). *See* ECF No. 54 at 22-23 (noting that "EPA's insistence on certified responses to all its requests for information is neither arbitrary nor capricious nor an abuse of discretion nor otherwise unlawful; the certifications provided assurance of full compliance by the Defendants.").

24.     On May 6, 2016, EPA informed UPCM that its May 2 response did not comply with the 104(e) request and that its "blanket assertions that the request is overly broad, vague or burdensome [are] unpersuasive and [do] not justify UPCM's failure to provide a full and complete response. Such failure may result in an enforcement action by EPA, pursuant to section 104(e) of CERCLA and the imposition of penalties of up to $37,500 per day of non-compliance." Appx. Ex. 10 at UPCM000743.

### UPCM's Supplemental Responses to the Information Request

25.     On July 13, 2016, UPCM provided a "supplemental" response to the 104(e) request (the "First Supplemental Response"). Appx. Ex. 16.

26.     The First Supplemental Response was 72 days late.

27.     The First Supplemental Response consisted of a one-page letter from Defendant's outside counsel, Kevin Murray, and five "batches" of documents. Appx. Ex. 16 at UPCM000945-946. The response was not organized by question, as required by the 104(e)

request. ECF No. 65 (requiring Defendants to identify documents that correlate to each request by bates number or other similar method). Nor was it accompanied by a notarized certificate, as required by the request. Appx. Ex. 1 (UPCM 104(e) Request) at UPCM001943.

28.   The First Supplemental Response was incomplete because, *inter alia*, UPCM refused to:

    a.   Provide tax returns, as required by Question 5;

    b.   Provide documents relating to its acquisition, as required by Question 6;

    c.   Identify transfers of assets and liabilities between UPCM and its affiliates, as required by Question 7; and

    d.   Provide all financial information and documents requested in Question 8.

29.   As part of batch "A," UPCM included narrative notes to its financial statements and an accompanying section of "Other Information" including "History and Assets Owned." Appx. Ex. 16 at UPCM000960-965.

30.   ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Appx. Ex. 16 at UPCM000963.

31.   ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* footnote 16, infra.

32.     UPCM designated every document included with its First Supplemental Response as confidential, even documents that were obviously publicly available. *See* Appx. Ex. 16 at UPCM000967-989, UPCM001015, UPCM001055, and UPCM001079-1305 (which were all clearly filed with the county recorder's office).[6]

33.     On July 29, 2016, UPCM provided a second "supplemental" response to the 104(e) request (the "Second Supplemental Response"). Appx. Ex. 17.

34.     The Second Supplemental Response was 88 days late.

35.     The Second Supplemental Response consisted of a three-page letter from Amanda Smith, one of UPCM's other outside counsel from Holland & Hart, accompanied by limited excerpts from UPCM's 2010-2014 tax returns (and portions of a request for extension of time to file its 2015 tax return) and limited financial statements for fiscal years 2011-2015. Appx. Ex. 17.

36.     The Second Supplemental Response contained a "general summary" of responsive information that had been submitted by UPCM to EPA, loosely organized by question. Appx. Ex. 17 at UPCM001717-1718.

37.     The Second Supplemental Response was not accompanied by a notarized certificate, as required by the 104(e) request. Indeed, the response indicated that "[i]nformation and materials have not been provided to the extent they . . . are beyond what we believe to be within the scope of the Request or regulatory authority, do not relate to [UPCM], or are not relevant to [UPCM's] ability to pay for or perform a cleanup," Appx. Ex. 17 at UPCM001719.

_____

[6] On July 30, 2021, UPCM finally agreed to withdraw its assertion and designation that these documents should be treated as confidential. ECF No. 71 at ⁋ 16.

38.     The Second Supplemental Response was still incomplete. For example, UPCM continued to refuse to:

    a.  Provide *complete* copies of its consolidated tax returns, along with copies of accounting and other work papers, as required by Question 5;

    b.  Provide documents relating to its acquisition, as required by Question 6;

    c.  Identify transfers of asset and liabilities between UPCM and its affiliates, as required by Question 7; and

    d.  Provide all financial information and documents requested in Question 8.

39.     On September 6, 2016, EPA informed UPCM that its collective response to the 104(e) request was still not complete: "EPA has carefully reviewed UPCM's response of May 2, 2016, the eight pages of unaudited financial information provided to the EPA at the June 15, 2016,[7] meeting with UPCM, and the documents mailed to the EPA on or about July 13, 2016, and July 29, 2016. The materials provided are incomplete [and] do not fully respond to the EPA's information request." Appx. Ex. 19 at UPCM001908. EPA also informed UPCM that "if UPCM refuses to fully respond to the Information Request and to cure the deficiencies outlined above within the next ten days, the EPA will consider taking enforcement action that may include the imposition of civil penalties." *Id.* at UPCM001910.

40.     UPCM refused to provide any further information or documents to remedy its noncompliance with the January 26 Information Request.

---

[7] A copy of the financial statements provided to EPA on June 15, 2016 is included as Appx. Ex. 13.

**Present Litigation and UPCM's Further Responses to the Information Request**

41.     On March 28, 2017, UPCM was informed that the Department of Justice had been asked to bring an action against it for violations of Section 104(e) of CERCLA. Appx. Ex. 23. Yet it still refused to remedy its noncompliance with the 104(e) request.

42.     The Government filed a complaint on May 30, 2017 against both UPCM and Talisker Finance to enforce the 104(e) requests. ECF No. 3.

43.     In discovery, UPCM admitted that it had not provided all information and documents responsive to the 104(e) request. *See* Appx. Ex. 30 at US_0000166 (admitting that it has not provided all the information requested in the January 26 Information Request and only affirmatively stating that it had complied with Questions 1-4, 11, and 13-20).

44.     On July 18, 2018, this Court ordered UPCM to comply with the 104(e) request within 30 days. ECF No. 43. This order was affirmed on appeal, and the Tenth Circuit issued its mandate on November 10, 2020. ECF No. 54.

45.     On December 9, 2020, exactly 30 days after the Tenth Circuit's mandate, UPCM supplemented its response to the 104(e) request. Appx. Ex. 25.[8]

46.     UPCM's December 9 response was 1,682 days late.

47.     UPCM's December 9 response was still incomplete.

48.     Despite acknowledging in discovery that it had not complied with Questions 5, 6, 7, 8, 9, 10, and 12 (*see* Appx. Ex. 30 at US_0000166), UPCM's December 9 response claimed

---

[8] UPCM's December 9, 2020 response included three attachments, totaling nearly 6,000 pages, (1) its consolidated tax returns for 2011-2015, (2) documents concerning its acquisition in 2003, and (3) a short table identifying ███████████████████████.

that the "only requests that the Company believes it has not yet answered, due to the Company's

objections, are Request 5, 6 and 7." Appx. Ex. 25 at US_0000278.

49.     UPCM did not provide any additional information in response to Questions 8, 9,

10, or 12. *See* Appx. Ex. 25 at US_0000278-282.

50.     While UPCM did provide complete copies of its consolidated tax returns for

2011-2015 (Question 5), it should also have provided its tax returns for the five years preceding

its response (i.e. the five years preceding December 9, 2020). *See* ECF No. 65 (ordering

Defendants to respond to 104(e) requests with current information).

51.     UPCM should have, but did not, supplement its corporate history to cover the

period through December 9, 2020, the date of its response (Question 6). Notably, UPCM

converted to a limited liability company in 2018. While UPCM eventually provided a copy of its

LLC agreement, it would only do so in response to the discovery requests. Appx. Ex. 37a. It

refused to provide the LLC agreement in response to the 104(e) request, even though it contains

information responsive to Question 6 (and therefore must be produced in response to Question

4).

52.     While UPCM did identify a limited number of transfers of assets and liabilities

between UPCM and three of its affiliates in response to Question 7, its response was incomplete.

For example, UPCM advanced an unreasonably narrow interpretation of the defined term

"Talisker Affiliate" and the related term "affiliated" to limit the scope of questions in the 104(e)

request that use those terms. This is the subject of a "motion for clarification," recently filed by

Defendants. ECF No. 67. By impermissibly narrowing the term Talisker Affiliate, UPCM has

14

failed to provide a complete response to Question 7 (and possibly Questions 8.e, 19, and 20 as well).

53.   Even if UPCM had properly interpreted the defined term Talisker Affiliate (and the related term "affiliated"), its response to Question 7 would still be incomplete. In response to Question 7, ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████

54.   In its May 2 response, UPCM objected to Question 7 as unduly burdensome. Appx. Ex. 9 (May 2 Response) at UPCM000704. But in its December 9 response, ██████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

55.   ████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

56.     On June 15, 2021, UPCM provided yet another response to the 104(e) request, this one in response to this Court's April 28, 2021 order. Appx. Ex. 28.

57.     UPCM's June 15, 2021 response was 1,870 days late.

58.     It was provided 197 days after the Tenth Circuit issued its mandate, affirming this Court's order directing UPCM to comply with the 104(e) request.

59.     In its UPCM's June 15, 2021 response, UPCM provided further information in response to Questions 3, 4, 5, and 7. Appx. Ex. 28 at US_0006754-6757.

60.     UPCM's June 15, 2021 response stated that UPCM had no further information responsive to Question 6. Appx. Ex. 28 at US_0006755. For the reasons noted in Paragraph 51 above, however, UPCM does have further information, which it has not provided, in response to Question 6.

61.     UPCM's June 15, 2021 response to Question 7, concerning transfers with affiliates, applied the same unreasonably narrow interpretation of "Talisker Affiliate" and "affiliated" discussed above and therefore suffers from the same problems as UPCM's December 9, 2020 response.

**The Information Request to Talisker Finance**

62.     █████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
███████████████████████.

63.     UPCM pledged property to secure a $150 million loan from Wells Fargo to Talisker Finance. *See* Appx. Ex. 38a (Amended and Restated Loan Agreement) at

16

EPA_00081756 (providing that loan shall be secured by Deeds of Trust) and EPA_00081747

(defining Deeds of Trust). Some of the proceeds of this loan were re-lent by Talisker Finance to

UPCM. *See id.* at EPA_00081757 (Section 2.4, Use of Loan Proceeds); Appx. Ex. 27 at

TALISKER000031-57.

64.     Talisker Finance failed to repay the Wells Fargo loan, leading to foreclosure sales

in October and November of 2015 of real property securing the loan, including the property

pledged by UPCM. Appx. Ex. 16 at UPCM000961, UPCM001079-1132.

65.     On September 12, 2016, EPA sent Talisker Finance a Request for Information

pursuant to CERCLA Section 104(e), 42 U.S.C. § 9604(e). Appx. Ex. 20.

66.     The request contained 12 separately numbered questions. Appx. Ex. 20 at

TALISKER000108.

67.     Talisker Finance received the 104(e) request on or about September 15, 2016.

ECF No. 14 (Talisker's Answer) at ¶¶ 40-41.

68.     A copy of the 104(e) request was also provided to Kevin Murray, a partner at

Holland & Hart in Salt Lake City. Appx. Ex. 21. According to his biography, Mr. Murray "has

significant experience with CERCLA, RCRA, state hazardous waste laws, and related

programs." https://www.hollandhart.com/krmurray#overview (last accessed July 21, 2021).

69.     The 104(e) request seeks information related to UPCM's ability to pay for or

perform a cleanup of the Richardson Flat Tailings Site. *See* Appx. Ex. 20 at TALISKER000104.

70.     Talisker Finance was required to provide a complete and truthful response to the

104(e) request, accompanied by a notarized certificate by October 15, 2016 (*i.e.*, within 30 days

of receipt). Appx. Ex. 20 at TALISKER000104.

71.     The 104(e) request noted that a "[f]ailure to respond fully and truthfully, or to adequately justify your failure to respond, can result in an enforcement action by the EPA, pursuant to section 104(e) of CERCLA, and the imposition of penalties of up to $53,907 per day of non-compliance." Appx. Ex. 20 at TALISKER000104.

72.     Talisker Finance was encouraged to give the 104(e) request its "immediate attention" and was advised that if it had any questions relating to the request to contact EPA. Appx. Ex. 20 at TALISKER000105.

**Talisker Finance's Response to the Information Request**

73.     Talisker Finance provided a response to the 104(e) request, dated October 14, 2016. Appx. Ex. 22.

74.     Talisker Finance's response was incomplete.

75.     Talisker Finance refused to identify its affiliates and senior officers and directors, as required by question 5. Appx. Ex. 22 at TALISKER000112-113, 116.

76.     Talisker Finance's response to Question 7, which required Talisker Finance to describe its relationship with UPCM, provided only that "[Talisker Finance] has been a borrower from Wells Fargo and a lender to [UPCM] and other entities." Appx. Ex. 22 at TALISKER000116. The response is materially incomplete because ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

18

77.     Talisker refused to "identify and provide copies of all documents relating to any transfers of assets and/or liabilities between Talisker Finance LLC and [UPCM]," as required by Question 7, falsely claiming instead that "there have been no transfers of assets or liabilities between the Company and United Park." Appx. Ex. 22 at TALISKER000116. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

78.     Talisker Finance refused to answer Questions 9 and 10 altogether. Appx. Ex. 22 at TALISKER000114.

79.     In response to Questions 11 and 12, Talisker Finance claimed that "the liabilities of [UPCM] have not been assumed." Appx. Ex. 22 at TALISKER 000114-115. Information provided later by Defendants in discovery, however, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

---

⁹ Talisker Finance may argue that the statement in its October 14 response was not false because the response was made "based on the Company's understanding." *See* Appx. Ex. 22 at TALISKER000116. This argument, however, would be contrary to the testimony of David J. Smith, who signed the October 14 response on behalf of Talisker Finance, as well as the testimony of Peter Palmeri, the comptroller for the Talisker group of companies who was later consulted in connection with Talisker Finance's response. Mr. Smith testified that he understood a loan would be an asset to the lender and a liability to the borrower, Appx. Ex. 34 (Smith Dep.) 147:2-148:2, as did Mr. Palmeri. Appx. Ex. 35 (Palmeri Dep.) 214:13-215:4.

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████

80.     Talisker Finance's response was not accompanied by a notarized certificate, as required by the 104(e) request. *See* Appx. Ex. 22.

81.     Talisker Finance designated all the documents provided as part of its October 14 response as confidential, even though they were all publicly available.[10] *See* Appx. Ex. 22 at TALISKER000117-239.

82.     On March 28, 2017, Talisker Finance was informed that the Department of Justice had been asked to bring an action against it for violations of Section 104(e) of CERCLA. Appx. Ex. 24. Talisker Finance nevertheless refused to remedy its noncompliance with the request.

83.     In discovery, Talisker Finance admitted that it had not provided all the information requested in the 104(e) request. *See* Appx. Ex. 31 at US_0000119 (admitting that it has not provided all the information requested in the 104(e) request and stating only that it had complied with Questions 1-4, 7, and 11-12).

---

[10] On July 30, 2021, Talisker Finance finally agreed to withdraw its assertion and designation that these documents should be treated as confidential. ECF No. 71 at ₱ 36.

**Talisker Finance's Supplemental Responses to the Information Request**

84.     On July 18, 2018, this Court ordered Talisker Finance to comply with the 104(e) request within 30 days. ECF No. 43. This order was affirmed on appeal, and the Tenth Circuit issued its mandate on November 10, 2020. ECF No. 54.

85.     On December 9, 2020, exactly 30 days after the Tenth Circuit's mandate, Talisker Finance supplemented its response to the 104(e) request. Appx. Ex. 26.

86.     Talisker Finance's December 9, 2020 response was 1,516 days late.

87.     The response was still incomplete.

88.     It did not contain a single document.

89.     Despite acknowledging in discovery that it had not complied with Questions 5, 6, 8, 9, and 10, *see* Appx. Ex. 31 at US_0000119, Talisker Finance's response claims that the "only request that the Company believes it has not yet answered, due to the Company's objections, is the portion of Request No. 5 asking the Company to 'identify all its affiliated companies.'" Appx. Ex. 26 at US_0000275.

90.     Talisker Finance did not provide any additional information in response to questions 6, 8, 9, or 10. Appx. Ex. 26 at US_0000275277.

91.     In response to Question 5, Talisker Finance advanced the same unreasonably narrow interpretation of "affiliated" as UPCM and identified only one affiliated company, ███ ████████████████████████████████████████. Appx. Ex. 26 at US_0000275-276.

92.     On February 3, 2021, Talisker Finance provided another supplement to the 104(e) request. Appx. Ex. 27.

93.     The February 3 response was 1,572 days late.

94.     It was provided 86 days after the Tenth Circuit issued its mandate, affirming this Court's order directing Talisker Finance to comply with the 104(e) request.

95.     Talisker Finance's February 3 response included information and documents about (1) transfers between Talisker Finance and UPCM (in response to Question 7) and (2) UPCM's receipt of proceeds from the Wells Fargo loan (in response to Questions 8 and 9). Appx. Ex. 27 at TALISKER000300-302.

96.     Talisker Finance's response, however, was still incomplete.

97.     

98.

99.     On June 15, 2021, Talisker Finance provided yet another response to the 104(e) request, this one in response to this Court's April 28, 2021 order. Appx. Ex. 29.

100.    Talisker Finance's June 15, 2021 response was 1,704 days late.

101.    It was provided 218 days after the Tenth Circuit issued its mandate, affirming this Court's order directing Talisker Finance to comply with the 104(e) request.

102.    It did not contain a single document. Appx. Ex. 29.

103.    Talisker Finance claimed that it had no further information responsive to questions 1, 3 and 5. Appx. Ex. 29 at US_0006750-6753.

104.    Talisker Finance's response to Question 5, concerning its affiliates, applies the same unreasonably narrow interpretation of "affiliated" contained in its December 9, 2020 response. As a result, Talisker Finance's response to this Question is still incomplete.

## IV.    STANDARD OF REVIEW

Summary judgment is proper under Federal Rule of Civil Procedure 56 where the Court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although evidence must be viewed in the light most favorable to the non-moving party, once the moving party has met its initial burden, the burden shifts and the non-moving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant.") (internal quotations omitted).

Courts routinely decide on summary judgment whether a response to a 104(e) request is unreasonable and, therefore, warrants imposition of a civil penalty. *Ponderosa Fibres of Am., Inc.*, 178 F. Supp. 2d at 162-64; *Martin*, 2000 WL 1029188, at *10; *Timmons Corp.*, 2006 WL 314457, at *15-17.

## V.    ARGUMENT

### A.    Defendants' Noncompliance with EPA's 104(e) Requests was Unreasonable as a Matter of Law.

Pursuant to CERCLA Section 104(e)(5), civil penalties may be assessed against any person "who unreasonably fails to comply" with a request for information. 42 U.S.C. § 9604(e)(5)(B). "Congress intended to impose a strict liability standard for violations of CERCLA . . . . Accordingly, the Government need not demonstrate that the defendant intended to act unreasonably, only that he in fact did act unreasonably." *Martin*, No. 99 C 1130, 2000 WL 1029188, at *7 (internal citations omitted); *Ponderosa Fibres of Am., Inc.*, 178 F. Supp. 2d at 162 (noting that "defendant's state of mind is irrelevant to the unreasonableness determination"); *accord Gurley*, 235 F. Supp. 2d at 805.[11] "Once the [United States] has made out a *prima facie* case of unreasonable activity, the burden of proof shifts to the defendant to rebut the government's case by the proffering of affirmative defenses. Since this section of CERCLA provides for civil penalties only, the standard of proof that [the] government must meet is a fair preponderance of the evidence." *United States v. Barkman*, 784 F. Supp. 1181, 1186 n.3 (E.D.

---

[11] "Although intention in failing to comply has no bearing [on whether defendant's noncompliance was unreasonable], intentions are applicable in determining the penalties to be assessed." *See Timmons Corp.*, 2006 WL 314457, at *16.

Pa. 1992) (internal citations omitted). Perhaps because intent is no defense, Courts typically decide whether a defendant's noncompliance was unreasonable on summary judgment.

A late response to a 104(e) request is presumptively unreasonable. *See Ponderosa Fibres of Am., Inc.*, 178 F. Supp. 2d at 162-64 (finding 97-day delay unreasonable as a matter of law); *Martin*, 2000 WL 1029188, at *8 (finding 607-day delay *per se* unreasonable); *Timmons Corp.*, 2006 WL 314457, at *15-16 (finding 1,300-day delay unreasonable as a matter of law); *accord Barkman*, 784 F. Supp. at 1187 ("Seven hundred plus days of delay is *per se* unreasonable and would ordinarily trigger the penalty provisions of CERCLA without further proof by the [Government].").

Failure to provide a complete response is also unreasonable. *See Ponderosa Fibres of Am., Inc.*, 178 F. Supp. 2d at 162-63 (failure to provide complete response for several years after the deadline was unreasonable); *Martin*, 2000 WL 1029188, at *8 ("The unreasonableness of [defendant's] excessive delay is exacerbated by the fact that to this day, [defendant] has not responded to the Government's outstanding requests for information."); *accord Timmons Corp.*, 2006 WL 314457, at *16 (rejecting defendant's excuses for delay); *Barkman*, 784 F. Supp. at 1187 (calculating penalty based on number of days until defendant came in to "full compliance" with the 104(e) requests); *Gurley*, 235 F. Supp. 2d at 803 (finding defendant unreasonably failed to comply with 104(e) requests based on his late and incomplete responses).

The Government may also establish a *prima facie* case by demonstrating a defendant's "evasive and willful efforts to avoid responding to" the 104(e) request. *Gurley*, 235 F. Supp. 2d at 803.

Here, Defendants' responses were both late and incomplete, making their noncompliance unreasonable as a matter of law. The undisputed facts also demonstrate that Defendants' actions amount to an evasive and willful effort to avoid responding completely to the 104(e) requests.

### 1.     UPCM's Noncompliance with the 104(e) Request was Unreasonable as a Matter of Law.

UPCM's noncompliance with the 104(e) request was unreasonable as a matter of law: (1) UPCM's response was late and piecemeal, (2) when UPCM did provide answers, they were incomplete and, at times, materially false or misleading, and (3) UPCM's actions throughout, reflected in the undisputed written record (Appx. Exs. 1-29), show that it has been deliberately uncooperative with EPA.

UPCM's recalcitrance was evident from the start. UPCM attempted first to get out of responding to the 104(e) request altogether, touting its past environmental work, offering to provide EPA with a "business plan," and requesting that "EPA suspend any current process or proceeding involving" the 104(e) request. Appx. Ex. 3 at UPCM000684-685. In other words, UPCM was asking EPA to accept some yet to be prepared "business plan" in lieu of the information and documents requested – a plan that would have nothing about UPCM being stripped of its assets by affiliates and saddled with debt. Without receiving any indication that EPA would accept this proposal, UPCM allowed the March 2, 2016 deadline for responding to the request come and go.

On March 8 (six days after the deadline), UPCM was informed that EPA would not abandon the 104(e) request but that it would "grant a reasonable extension of time, such as thirty days," to respond. Appx. Ex. 4. EPA also stated that it was "willing to meet informally with UPCM within those thirty days to discuss the proposed liens and other outstanding issues"

(including UPCM's failure to pay a September 17, 2005 oversight bill). *Id.* On March 18, UPCM sought a 60-day extension, twice the length EPA had offered. Appx. Ex. 5. While irritated by the delay, EPA granted "an extension to May 2, 2016, which represents a total extension of 61 days from the original due date. EPA grants this request with the understanding that a meeting between EPA and UPCM will occur before May 2, 2016." Appx. Ex. 6. Disregarding this, on April 4, UPCM requested to meet with EPA on May 18 – after the May 2 deadline – to present and discuss its "business plan." Appx. Ex. 7. Now clearly frustrated, EPA responded that it could not "continue to accommodate UPCM's delay" and reiterated that it was "willing to meet with UPCM before May 2, 2016." Appx. Ex. 8 at UPCM000697. EPA reminded UPCM that it could seek "penalties associated with any failure to respond to the" 104(e) request. *Id.* at UPCM000697-698.

On May 2, 2016, UPCM provided a woefully inadequate and unreasonable response to the 104(e) request (Appx. Ex. 9):

- It did not include a single document (Appx. Ex. 32 (Gee 104(e) Dep.) 85:24-86:11);

- Other than the standard, introductory questions about who was involved in preparing the response and who should receive future communications from EPA about the requests, the only substantive answer was to a portion of Question 6 asking about UPCM's corporate history, and even that, as brief and general as it was, contained a knowing and material misstatement. The response stated that "UPCM was acquired by Talisker in 2003." Appx. Ex. 9 at UPCM 000704.[12] In fact, UPCM was acquired

---

[12] The 104(e) response defined "Talisker" to mean Talisker Finance LLC. Appx. Ex. 1 at UPCM001946.

by Capital Growth Partners, as UPCM well knew (Appx. Ex. 34 (Smith Dep.) 134:6-137:1, 143:5-7);

- UPCM refused altogether to answer Questions 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, and 20, lodging frivolous objections instead, Appx. Ex. 9 at UPCM00703-708; and

- It was not accompanied by a notarized certificate as required by the request.[13]

UPCM's noncompliance is particularly egregious, given that it had a full three months – all the time it asked for – to prepare its response and had available experienced counsel from Holland & Hart to help. *See Timmons Corp.*, 2006 WL 31447, at *16 (noting that defendant's "attorney was available to aid in providing the information timely and yet incomplete information was given to the EPA nearly three years later").

To be sure, UPCM's May 2 response indicated that when it met with EPA it would present a "business plan addressing the ability of the company to pay for or perform the work at the Site."[14] Appx. Ex. 9 at UPCM000701.

But any conceivable thought that UPCM could dissuade EPA from investigating the impact of its transactions with affiliates on its ability to pay would have had to been shattered upon receipt of EPA's May 6 response. Appx. Ex. 10. That response informed UPCM that its objections to the 104(e) request were not credible and that "UPCM's blanket assertions that the

---

[13] UPCM's new excuse for not providing a notarized certificate – because its responses were admittedly incomplete – defies common sense. There is no reason UPCM couldn't have certified the portions of the response that were complete and identified the information and documents it was withholding on the basis of its objections.

[14] A copy of the "business plan" referenced in UPCM's May 2 response is attached as Appx. Ex. 12.

request is overly broad, vague or burdensome [are] unpersuasive and [do] not justify UPCM's

failure to provide a full and complete response." Appx. Ex. 10 at UPCM000742-743. EPA

reminded UPCM that its continuing noncompliance could result in the imposition of civil

penalties. *Id.* at UPCM000743. Perhaps most significantly, EPA expanded on the reasons it was

seeking information about UPCM's ability to pay, explaining that:

- UPCM had failed to reimburse EPA for oversight costs, as it was required to do under the 2014 AOC;

- A Judgment and Decree of Foreclosure was entered against UPCM, in an action initiated by Wells Fargo;

- Based on pleadings in the foreclosure action, "it appears that UPCM pledged its assets as collateral for loans made to Talisker Finance LLC, its parent corporation or affiliated corporation;"

- "The Talisker conglomerate is a privately owned foreign real estate enterprise based in Canada. There is very little public information available about the enterprise;" and

- "According to the Summit County assessor's office, property subject to cleanup pursuant to the [2015 AOC] has been transferred from UPCM to a Talisker related company."

*Id.* at UPCM00742-743.

Despite the clear notice that EPA's concerns extended to the Wells Fargo loan and

UPCM's transactions with the "Talisker conglomerate," UPCM double downed on its efforts to

dissuade EPA from enforcing the 104(e) request. On June 15, nearly six weeks after being told

explicitly about the reasons for EPA's concerns, UPCM appeared at a meeting with EPA to

present its "business plan." This plan, however, was not responsive to any of EPA's requests,

didn't address any of the concerns expressed in EPA's May 6 letter, and was certainly no

substitute for the information and documents responsive to the 104(e) request. The plan said

nothing about the Talisker conglomerate, the Wells Fargo loan, or UPCM's transactions with its

affiliated companies. Appx. Ex. 12. If anything, the plan – ███████████████████████████████

████████████████████████████████████████████████████████[15] – substantiated EPA's

concerns about UPCM's ability to pay for cleanups at the Richardson Flat and Uintah Mining

District sites. But even if the business plan were responsive to EPA's requests (which it clearly

was not), UPCM doesn't get to decide what information and documents it must provide in

response to a 104(e) request, and it would have been patently unreasonable for UPCM to think it

could. *See United States v. Pretty Products, Inc.*, 780 F. Supp. 1488, 1507 (S.D. Ohio 1991)

(noting that a defendant "may not decide for the EPA when they have provided sufficient

information"); *accord Gurley*, 235 F. Supp. 2d at 804 ("EPA has the authority to seek

information from [defendant] even if the EPA already possessed – from other sources – some of

the information it was seeking from [defendant]").

On June 22, UPCM was informed yet again that it had failed to adequately respond to the

104(e) request. Appx. Ex. 14 at UPCM000747. EPA politely told UPCM that while it

appreciated hearing about the business plan, "the information provided does not satisfy the

requirements of CERCLA section 104(e) and does not excuse UPCM's failure to respond to the

Information Request." *Id.* EPA's letter indicated that "UPCM committed [at the June 15

---

[15] OU1 is a part of the Richardson Flat Tailings Site.

meeting] to provide EPA with much of the requested financial information, identify those requests it believed to be overly burdensome and to suggest a narrower response. To that end, EPA expects to receive such information within fifteen days of your receipt of this letter." *Id.* at UPCM000747-748.

UPCM provided supplemental responses to the 104(e) request on July 13, 2016 and July 29, 2016. Appx. Exs. 16 and 17. These supplemental responses were provided 72 and 88 days, respectively, after the May 2 deadline. In addition to being late, the July supplemental responses were incomplete:

- They did not include complete copies of UPCM's consolidated tax returns, along with copies of accounting and other word papers, as required by Question 5;

- They did not include documents relating to UPCM's acquisition in 2003, as required by Question 6;

- They did not identify transfers of assets and liabilities between UPCM and its affiliates, as required by Question 7; and

- They did not include all the financial information and documents requested in Question 8.

*See* Appx. Ex. 16 (UPCM's July 13 response), Appx. Ex. 17 (UPCM's July 29 response), and Appx. Ex. 30 (UPCM's Interrogatory Responses) at US_0000166 (admitting that it only complied with Questions 1-4, 11, and 13-20). Moreover, the July supplemental responses were not organized by question, and were not accompanied by a notarized certificate. *See* Appx. Ex. 16, Appx. Ex. 17.

Not only were the July supplemental responses late and incomplete, but in some cases

they were materially false. For example, ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████.[16]

Even after EPA informed UPCM that its response was still incomplete, Appx. Ex. 19,

UPCM continued to refuse to provide any further information or documents. It took the filing of

---

[16] Before it was acquired by a Talisker subsidiary, UPCM owned land in Empire Canyon
on which the Montage hotel was later built (the "Montage property"). On the day it was
acquired, UPCM transferred this property to a subsidiary, Mountain Developments I, Inc.
("MDII"). Appx. Ex. 38b. UPCM later agreed to lease the property to DV Luxury Resort LLC,
who planned to construct a Montage hotel on the property. *See* Appx. Ex. 38c at US_0006793, ¶
74 (referencing an agreement to lease, dated December 19, 2005, between DV Luxury Resort,
UPCM, and Talisker Empire Pass Hotel LLC); US_0006812 (noting that the "owner of the
Property [UPCM] has entered into an agreement to lease the Property to DV Luxury Resort, LLC
(DVLR). DVLR is proposing the construction of a hotel, spa and condominium project on the
Property called the Montage Hotel and Spa."). In 2007, MDII transferred the Montage property
to Talisker Empire Pass Hotel LLC ("TEPH"), an indirect subsidiary of UPCM. Appx. Ex. 38d.
TEPH then leased the property to DV Luxury Resort. Appx. Ex. 38e. In subsequent years, DV
Luxury Resort constructed the Montage hotel and ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See also* Appx. Ex. 38f
(Park Record news article) (describing lawsuit alleging that entities were transferred in late 2015
to a related entity "called Hampstead Equities GP Inc."). The circumstances surrounding the
transfer of this asset – worth well more than $100 million, *see* Appx. Ex. 38g – suggest it was
part of an effort to conceal assets from UPCM's creditors (or at least make them more difficult to
reach).

this case, an order from this Court, and an appeal to the Tenth Circuit, which affirmed that order, to get UPCM to provide any further information or documents.

On December 9, 2020, 1,682 days after the May 2 deadline and exactly 30 days after the Tenth Circuit's mandate, UPCM provided another supplemental response. But even this wasn't complete:

- While UPCM admitted in discovery that it had not complied with Questions 5, 6, 7, 8, 9, 10, and 12 and had not produced anything in response to the 104(e) request since July 29, 2016,[17] UPCM's December 9 response only addressed Questions 5, 6, and 7.

- While UPCM provided complete copies of its tax returns for 2011-2015, in response to Question 5, it should also have provided tax returns for the five years preceding its response (i.e. the five years preceding December 9, 2020), as the Court on April 28, 2021 ordered it to do. *See* ECF No. 65.

- While UPCM provided the acquisition documents requested in Question 6, it failed to update its response with current information. Had it done so it would have supplemented the description of its corporate history to include its conversion to a limited liability company in 2018 and produced a copy of its LLC agreement (as a document that contains information responsive to Question 4.

---

[17] *See* Appx. Ex. 30 (UPCM's Interrogatory Responses) at US_0000166 (admitting that it only complied with Questions 1-4, 11, and 13-20).

- More glaring still, UPCM failed to provide information and documents concerning its transactions with all "Talisker Affiliates" in response to Question 7. UPCM applied an unreasonably narrow interpretation of the defined term "Talisker Affiliate" to inappropriately exclude transactions with dozens of other affiliates. This is the subject of a "motion for clarification," recently filed by Defendants.

**Table 1. Summary of UPCM response to Information Request**

| Response | Days Late | Summary of noncompliance |
|---|---|---|
| May 2, 2016 (Appx. Ex. 9) | 0 | Response does not include a single document; No answer (other than frivolous objections) to Questions 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, and 20; Scant information provided included a knowing and materially false statement, i.e. that UPCM was acquired by Talisker Finance in 2003; and Response not accompanied by a notarized certificate. |
| July 13, 2016 (Appx. Ex. 16) | 72 | Still no answer to Question 5; UPCM was still refusing to provide documents relating to its acquisition by a Talisker subsidiary, as required by Question 6; Refused to identify transfers with affiliates or provide copies of documents relating to these transfers, as required by Question 7; At least some of the information provided was materially false. For example, ██████████████████████████████████████████████████████████████ All documents marked confidential, even ones that are publicly available; Response not organized by question; and Response not accompanied by a notarized certificate. |
| July 29, 2016 | 88 | Incomplete response to Question 5; |

| Response | Days Late | Summary of noncompliance |
|---|---|---|
| (Appx. Ex. 17) | | Still refusing to provide documents relating to acquisition, as required by Question 6; |
| | | Still have not identified transfers with affiliates or provided copies of documents relating to these transfers, as required by question 7; and |
| | | Response not accompanied by a notarized certificate. |
| December 9, 2020 (Appx. Ex. 25) | 1,682 | Did not include most recent five years of tax returns; |
| | | Did not supplement response to Questions 8, 9, 10, and 12, which UPCM admitted in discovery it had not yet fully complied with; |
| | | Response pushes an unreasonably narrow interpretation of the defined term "Talisker Affiliate," and therefore fails to identify transfers with all affiliates, as required by Question 7; and |
| | | Response to Questions 8.e, 19, and 20 may also be incomplete, as those Questions also use the define term "Talisker Affiliate." |
| June 15, 2021 (Appx. Ex. 28) | 1,870 | Response failed to update corporate history, in response to Question 6, to account for its conversion to a limited liability company and provide a copy of LLC agreement (as required by Question 4); and |
| | | Response continues to push an unreasonably narrow interpretation of the defined term "Talisker Affiliate," and therefore fails to identify transfers with all affiliates, as required by Question 7. |

### 2. Talisker Finance's Noncompliance With the 104(e) Request was Unreasonable as a Matter of Law.

Talisker Finance was required to respond to the 104(e) request by October 15, 2016. While it responded within the deadline, Talisker Finance's response was inadequate and unreasonable as a matter of law:

- Talisker Finance refused to identify its affiliates, as required by Question 5;

- Talisker Finance's response to Question 7 was incomplete. It did not disclose that

  ███████████████████████████████████████████████████

  ████████████████████████████████████████. Appx. Ex. 36

  at UPCM002839-2840. The response also falsely stated that there have been no

  transfers of assets or liabilities between Talisker Finance and UPCM. Appx. Ex. 22 at

  TALISKER000116.

- Talisker Finance refused altogether to answer Questions 9 and 10, lodging objections

  instead;

- The documents provided were all marked confidential, even though they are all

  publicly available;

- The documents provided were not identified by question, as required by the request;

  and

- The response was not accompanied by a notarized certificate as required by the

  request.

Like UPCM, Talisker Finance refused to provide any further information or documents to

remedy its noncompliance, forcing the Government to file this action.

On December 9, 2020, 1,516 days after the October 15, 2016 deadline and exactly 30

days after the Tenth Circuit's mandate affirming this Court's order directing Talisker Finance to

comply, Talisker Finance submitted a supplemental response. This response was still incomplete:

- In discovery, Talisker Finance admitted that it had not complied with Questions 5, 6,

  8, 9, and 10. Appx. Ex. 31 at US_0000119. Yet Talisker Finance's December 9

  response only supplemented Question 5, which requires Talisker Finance to identify

its affiliates, claiming that is the only question it had not yet answered. Appx. Ex. 26 at US_0000275.

- Like UPCM, Talisker Finance attempted to restrict the scope of Question 5 by advancing an unreasonably narrow interpretation of "affiliated company." This is the subject of a "motion for clarification," recently filed by Defendants. This unreasonably narrow interpretation would allow Talisker Finance to keep the identity of its affiliates secret, thereby making it harder to assess the merits of potential fraudulent conveyance and veil piercing claims.

On February 3, 2021, Talisker Finance provided another response to the 104(e) request. Appx. Ex. 27. The February 3 response took a small step toward remedying Talisker Finance's continuing noncompliance with Questions 7, 8, and 9. The response included the Amended and Restated Loan Agreement between Talisker Finance and UPCM and other Talisker affiliates (and several modifications to this agreement).[18] The response also included "Attachment 3" to UPCM's December 9, 2020 response (which identifies a limited number of transfers between Talisker Finance and UPCM). Appx. Ex. 27 at TALISKER000303-326. It does not, however, identify and provide copies of documents relating to all transfers between Talisker Finance and UPCM, as EPA's request requires. Nor does it identify or provide copies of all documents relating to UPCM's receipt of proceeds from the Wells Fargo loan. For example, ████████

████████████████████████████████████████

████████████████████████████████████████

---

[18] These documents had previously been provided in discovery but not in response to the 104(e) request.



**Table 2. Summary of Talisker Finance's Response to Information Request**

| Response | Days Late | Summary of noncompliance |
|---|---|---|
| October 14, 2016<br><br>(Appx. Ex. 22) | 0 | Refused to identify affiliates as required by Question 5<br><br>Response to Question 7 was materially incomplete because █████<br>████████████████████████████<br><br>Refused to "identify and provide copies of all documents relating to any transfers of assets and/or liabilities between Talisker Finance LLC and [UPCM]," as required by Question 7, falsely claiming that "there have been no transfers of assets or liabilities between the Company and [UPCM]."<br><br>No answer (other than frivolous objections) to Questions 9 and 10;<br><br>Response to Questions 11 and 12 that "the liabilities of [UPCM] have not been assumed," ████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>████████████████████████████████<br>██████████████████████<br><br>Designated documents as confidential, even though they are all publicly available;<br><br>Response not organized by question; and |

---

[19] Appx. Ex. 16 at UPCM000961.

| Response | Days Late | Summary of noncompliance |
|---|---|---|
| | | Response not accompanied by a notarized certificate. |
| December 9, 2020<br><br>(Appx. Ex. 26) | 1,516 | Did not supplement response to Questions 6, 8, 9, and 10, which Talisker Finance admitted in discovery it had not yet fully complied with; and<br><br>Response pushes an unreasonably narrow interpretation of the term "affiliated" and therefore fails to identify all affiliated companies, as required by Question 5; and<br><br>Response to Question 12 may also be incomplete, as Question 12 also uses the term "affiliate." |
| February 3, 2021<br><br>(Appx. Ex. 27) | 1,572 | Despite claiming earlier that it had complied with Question 7, Talisker Finance's February 3 response includes loan documents and the identity of transfers between Talisker Finance and UPCM responsive to Question 7. The response, however, is still incomplete.<br><br>███████████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████<br>███████████████████████ |
| June 15, 2021<br><br>(Appx. Ex. 29) | 1,704 | Response continues to push an unreasonably narrow interpretation of the term "affiliated" and therefore fails to identify all affiliated companies, as required by Question 5. |

## VI.   CONCLUSION

The undisputed material facts demonstrate that Defendants' noncompliance was unreasonable as a matter of law. The Court should find that Defendants' noncompliance was unreasonable and set the case for trial to determine the appropriate amount of civil penalties to be imposed against each Defendant.

Respectfully submitted,

JEFFREY SANDS
Assistant Section Chief
Environmental Enforcement Section
United States Department of Justice


/s/ Mark C. Elmer
MARK C. ELMER
ALEXANDRA B. SHERERTZ
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

OF COUNSEL:

AMELIA PIGGOTT
Enforcement Attorney
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202

*Attorneys for the United States of America*

MARK C. ELMER
ALEXANDRA B. SHERERTZ
U.S. Department of Justice
Environmental Enforcement Section
999 18th Street, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1352
Mark.Elmer@usdoj.gov
Alexandra.Sherertz@usdoj.gov

*Attorneys for Plaintiff United States of America*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-CV-00482-TC |
| Plaintiff, | **APPENDIX OF EVIDENCE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| UNITED PARK CITY MINES COMPANY and TALISKER FINANCE LLC, | Judge Tena Campbell |
| Defendants. | |

| Exhibit | Bates No. | Title/Description | Source |
|---|---|---|---|
| 1 | UPCM001943-1951 | Request for information issued by EPA to UPCM pursuant to Section 104(e) of CERCLA, dated January 26, 2016 ("UPCM 104(e) Request") | EPA |
| 2 | UPCM001929 | January 27, 2016 email (without attachments) from Amelia Piggott, counsel for EPA, to Kevin R. Murray, counsel for UPCM | EPA |
| 3 | UPCM000684-685 | February 19, 2016 letter from Kevin R. Murray to Amelia Piggott | UPCM |
| 4 | UPCM000686-687 | March 11, 2016 letter from Amelia Piggott to Kevin R. Murray | EPA |
| 5 | UPCM000688 | March 18, 2016 letter from Kevin R. Murray to Amelia Piggott | UPCM |
| 6 | UPCM000690-692 | March 25, 2016 letter from Amelia Piggott to Kevin R. Murray | EPA |
| 7 | UPCM000696 | April 4, 2016 letter from Kevin R. Murray to Amelia Piggott | UPCM |
| 8 | UPCM000697-698 | April 13, 2016 letter from Amelia Piggott to Kevin R. Murray | EPA |
| 9 | UPCM000699-709 | UPCM's May 2, 2016 response to the UPCM 104(e) Request ("May 2 Response") | UPCM |
| 10 | UPCM000742-743 | May 6, 2016 letter from Andrea Madigan, counsel for EPA, to Kevin R. Murray and Kerry Gee | EPA |
| 11 | EPA_00324283-324284 | June 10, 2016 email with attached proposed agenda from Kevin R. Murray to Andrea Madigan | UPCM |
| 12 | US_0000239-274 | June 2016 Business Plan provided to EPA by UPCM on June 15, 2016 | UPCM |

| Exhibit | Bates No. | Title/Description | Source |
|---|---|---|---|
| 13 | US_0000223-231 | Financial statements provided to EPA by UPCM on June 15, 2016 | UPCM |
| 14 | UPCM000746-748 | June 22, 2016 letter from Amelia Piggott to Kevin R. Murray | EPA |
| 15 | UPCM000749-753 | July 5, 2016 letter from Kevin R. Murray to Amelia Piggott | UPCM |
| 16 | UPCM000945-1716 | UPCM's July 13, 2016 supplemental response to the UPCM 104(e) Request | UPCM |
| 17 | UPCM001717-1907 | UPCM's July 29, 2016 supplemental response to the UPCM 104(e) Request | UPCM |
| 18 | UPCM001930 | July 29, 2016 email from Amanda Smith, counsel for UPCM, to Andrea Madigan | UPCM |
| 19 | UPCM001908-1910 | September 6, 2016 letter from Andrea Madigan and Aaron Urdiales to Kerry Gee and Kevin R. Murray | EPA |
| 20 | TALISKER0001 04-109 | Request for information issued by EPA to Talisker Finance pursuant to Section 104(e) of CERCLA, dated September 12, 2016 ("Talisker 104(e) Request") | EPA |
| 21 | TALISKER0002 67 | September 12, 2016 email (without attachment) from Andrea Madigan to Amanda Smith and Kevin Murray | EPA |
| 22 | TALISKER0001 10-239 | Talisker Finance's October 14, 2016 response to the Talisker 104(e) Request | Talisker Finance |
| 23 | UPCM001917-1918 | March 28, 2017 letter from Mark C. Elmer to Kevin R. Murray | DOJ |
| 24 | TALISKER0002 40-241 | March 28, 2017 letter from Mark C. Elmer to David J. Smith | DOJ |
| 25 | US_0000278-282; | UPCM's December 9, 2020 further response to the UPCM 104(e) Request (excerpt only due to | UPCM |

| Exhibit | Bates No. | Title/Description | Source |
|---|---|---|---|
|  | US_0006212-6235 | size, confidentiality designation, and immateriality to present motion) |  |
| 26 | US_0000275-277 | Talisker Finance's December 9, 2020 further response to the Talisker 104(e) Request | Talisker Finance |
| 27 | TALISKER000300-326, together with TALISKER0000 31-57 and TALISKER0000 89-103 | Talisker Finance's February 3, 2021 further response to the Talisker 104(e) Request | Talisker Finance |
| 28 | US_0006754-6760, together with UPCM003320, 3329-3335, 4191, 4195, 3648, and 3653-3657 | UPCM's June 15, 2021 further response to the UPCM 104(e) Request (excerpt only due to size, confidentiality designation, and immateriality to present motion) | UPCM |
| 29 | US_0006750-6753 | Talisker Finance's June 15, 2021 further response to the Talisker 104(e) Request | Talisker |
| 30 | US_0000161-222 | UPCM's Response to Plaintiff's First Set of Interrogatories, dated October 26, 2017 | UPCM |
| 31 | US_0000114-160 | Talisker Finance's Response to Plaintiff's First Set of Interrogatories, dated October 26, 2017 | Talisker |
| 32 | N/A | Deposition of Kerry Gee, January 27, 2021 ("Gee 104(e) Dep.") | Deposition |
| 33 | N/A | Excerpt of Deposition of Kerry Gee, August 13, 2020 ("Gee AOC Dep.") | Deposition |
| 34 | N/A | Deposition of David J. Smith, February 3, 2021 ("Smith Dep.") | Deposition |
| 35 | N/A | Deposition of Peter Palmeri, February 4, 2021 ("Palmeri Dep.") | Deposition |

| Exhibit | Bates No. | Title/Description | Source |
|---|---|---|---|
| 36 | UPCM002832-2855 | UPCM's corporate organizational charts for years ending 2011 through 2020, provided by Defendants in response to an interrogatory | UPCM |
| 37 | None | Declaration of Geoff Stewart | DOJ |
| 37a | UPCM003309-3318 | UPCM's LLC Agreement, dated December 31, 2018 | UPCM |
| 37b | UPCM002176-2187 | UPCM accounting records, as of June 30, 2016, provided in discovery by Defendants in February 2021 | UPCM |
| 37c | UPCM002261-2288 and UPCM002291-2292 | UPCM's Wells Fargo bank statements for calendar year 2011 and January 2012, provided in discovery by Defendants in February 2021 | UPCM |
| 38 | None | Declaration of Amelia Piggott | EPA |
| 38a | EPA_00081740-81852 | Amended and Restated Loan Agreement between Talisker Finance and Wells Fargo, dated October 20, 2010, provided by Wells Fargo in response to a 104(e) request | Wells Fargo |
| 38b | None | Special Warranty Deed between UPCM and Mountain Developments I, Inc., dated July 18, 2003 | https://property.summitcounty.org/eaglesoftware/eagleweb/viewAttachment.jsp?docName=00665964&id=DOCC00665964.A0&parent=DOCC00665964 |
| 38c | US_0006761-7041 | Agreement and Covenant Not to Sue DV Luxury Resort LLC, EPA Docket No. CERCLA-08-2007-0001 | EPA |

| Exhibit | Bates No. | Title/Description | Source |
|---------|-----------|-------------------|--------|
| 38d | None | Special Warranty Deed between Mountain Developments I, Inc. and Talisker Empire Pass Hotel LLC, dated May 23, 2007 | Summit County Recorder's website |
| 38e | None | Memorandum of Lease between Talisker Empire Pass Hotel LLC and DV Luxury Resort LLC, dated May 23, 2007 | Summit County Recorder's website |
| 38f | None | Article in the Park Record, dated April 12, 2019, "Lawsuit: Talisker entities undertook 'elaborate scheme' to avoid repaying loan" | https://www.parkrecord.com/news/lawsuit-talisker-entities-undertook-elaborate-scheme-to-avoid-repaying-loan/ |
| 38g | None | November 12, 2013 Memorandum to County Council from David L. Thomas, Chief Civil Deputy, Re: Montage Tax Settlement | Summit County's website |