IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED PARK CITY MINES COMPANY and TALISKER FINANCE LLC,<br><br>                Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:17-cv-482-TC<br><br>District Judge Tena Campbell |

Before the court is the Defendants' motion for clarification. (ECF No. 67). They ask the court to define the scope of several information requests that the court, in its Order and Memorandum Decision dated July 6, 2018, directed the Defendants to answer. (ECF No. 43). The United States opposes the motion, (ECF No. 75), and the Defendants submitted a reply in support. (ECF No. 82). The matter is fully briefed, and for the reasons below, the court denies the Defendants' motion.

## BACKGROUND

In 2016, the Environmental Protection Agency (EPA) submitted separate information requests to Defendants United Park City Mines Company (UPCM) and Talisker Finance LLC under Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9604(e), about UPCM's ability to pay for or perform remediation at sites contaminated with mining waste in and around Park City, Utah. The Defendants did not respond to some of the requests on the grounds that the requests were outside the scope of § 9604(e). In May 2017, the United States filed a complaint against the Defendants, seeking to enforce the EPA's information requests. (ECF No. 3).

In June 2018, the court issued an order denying the Defendants' motion for summary judgment, granting partial summary judgment to the United States, and ordering the Defendants to "comply with the requests for information issued by EPA." (ECF No. 43 at 6). The United States Court of Appeals for the Tenth Circuit affirmed. United States v. United Park City Mines Co., 827 F. App'x 871, 874 (10th Cir. 2020).

After the Tenth Circuit decision took effect on November 9, 2020, the Defendants submitted additional information to the EPA. When the parties ran into a snag about the scope of the information requests, the Defendants sought to clarify (1) whether they had to provide current information in response to the information requests, and (2) whether they had to specifically identify responsive documents and information in response to each request. In an order dated April 28, 2021, the court answered both questions in the affirmative. (ECF No. 65). The Defendants subsequently gave the EPA more documents and information. (ECF No. 67 at 5). In the ensuing months, however, the parties again arrived at an impasse over the precise scope of the EPA's information requests. That is the subject of the Defendants' motion.

## ANALYSIS

In their motion, the Defendants seek clarification on a single issue—indeed, on a single word. In its two information requests, the EPA several times referred to "Talisker Affiliates" and Talisker Finance's "affiliated companies." (ECF No. 67-1 at 7–9; ECF No. 67-2 at 6). As part of its information request to UPCM, the EPA defined Talisker Affiliate as "all entities <u>affiliated</u> with Talisker Finance LLC, including Tuhaye LLC, Tuhaye Golf, LLC, Empire Pass Club LLC, Talisker Land Holdings, LLC, and any other entity that is related to Talisker Finance LLC by virtue of shared management or ownership." (ECF No. 67-1 at 5 (emphasis added)). The Defendants ask the court to resolve a dispute over how broadly to interpret the word "affiliated."

2

As one might expect, the Defendants argue for a narrow definition of "affiliated," while the United States contends that the definition is much broader. The Defendants propose the following definition, derived from the Merriam-Webster dictionary: Affiliated means "closely associated with another[,] typically in a dependent or subordinate position." (ECF No. 67 at 2). Under this definition, "Talisker Affiliates" would include Talisker Finance's "parent entity, any sister entities under common control of the parent entity, and any subsidiaries." (Id.) Their position is premised on the EPA's information requests, which state that "[a]ll terms not defined herein shall have their ordinary meaning, unless such terms are defined in CERCLA." (ECF No. 67-1 at 6). Because, in the Defendants' view, CERCLA does not define "affiliated," the ordinary (i.e., dictionary) definition should apply.

The United States calls Defendants' definition "cramped," (ECF No. 75 at 5), and asks the court to find that "affiliate" "includes any person or entity 'that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with' another person or entity." (Id. at 19). Also, more specifically, the United States argues that "Talisker Affiliate" should "include[] all the entities identified on UPCM's corporate organizational charts (Ex. 4), plus all other entities that are related to Talisker Finance by virtue of shared management or ownership, including the ultimate owner of Talisker Investments (Canada) Inc." (Id.) The United States bases its expansive definition of "affiliated" on other statutes and regulations, the word's meaning in the business community, and even the Defendants' own usage of the word in their corporate affairs. Because using a broad definition of "affiliate" would expand the number of possible Talisker Affiliates, choosing the United States' definition would magnify the amount of information that the Defendants would need to turn over to the EPA.

3

With that said, the court agrees with the United States that a broader definition of "affiliated" is most appropriate. This comports with the contextual meaning of affiliated, the ordinary meaning of affiliated, and the meaning of affiliated elsewhere in CERCLA.

### A. The Contextual Meaning of "Affiliated"

To begin, the EPA has already done some of the definitional legwork for the parties. In its information request to UPCM, the EPA defined "Talisker Affiliate" in part as "all entities affiliated with Talisker Finance LLC, including Tuhaye LLC, Tuhaye Golf, LLC, Empire Pass Club LLC, [and] Talisker Land Holdings, LLC." (ECF No. 67-1 at 5). By listing Tuhaye LLC, Tuhaye Golf, LLC, Empire Pass Club LLC, and Talisker Land Holdings, LLC as examples of entities affiliated with Talisker Finance, the EPA established that they are, by definition, affiliated with Talisker Finance LLC.

Instead of conceding this premise, the Defendants assert that based on their own definition of "affiliated," those four entities cannot be considered affiliates of Talisker Finance. (ECF No. 82 at 8). The Defendants miss the point. The instructions direct the parties to only look to the ordinary meaning for words "not defined herein." Those four entities are part of the very definition of "affiliated" given to UPCM. And if those four entities are affiliates of Talisker Finance, the proper definition of "affiliated" must necessarily be broader than the definition for which the Defendants argue.

With that contextual parameter established, the court turns to examine the ordinary meaning of "affiliated."

### B. The Ordinary Meaning of "Affiliated"

"Dictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term." In re Mallo, 774 F.3d 1313, 1321 (10th Cir. 2014). The New Oxford

4

American Dictionary (2d ed. 2005) defines the verb "affiliate" as "officially attach or connect (a subsidiary group or a person) to an organization." Id. at 26. Similarly, it defines the noun "affiliate" as "a person or organization officially attached to a larger body." Id. Merriam Webster's Collegiate Dictionary (10th ed. 1993) defines the verb "affiliate" as "to bring or receive into close connection as a member or branch" or "to associate as a member." Id. at 20. Similarly, it defines the noun "affiliated" as "closely associated with another[,] typically in a dependent or subordinate position." Id. Black's Law Dictionary (11th ed. 2019) defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."

Because the EPA already established that Tuhaye LLC, Tuhaye Golf, LLC, Empire Pass Club LLC, and Talisker Land Holdings, LLC are affiliated with Talisker Finance, it makes sense to read the dictionary definitions with this stipulation in mind. Based on the Defendants' organizational chart (ECF No. 75-4) and the Defendants' own admission (ECF No. 82 at 8), none of these entities are immediately adjacent (as a parent, sister, or subsidiary) to Talisker Finance. The dictionary definitions must therefore be read in a way that encompasses these four entities. And by reading the definitions expansively, other nonadjacent corporate entities will necessarily come under the affiliation umbrella.

The New Oxford definition of affiliate, "a person or organization officially attached to a larger body," can include the four LLCs if the "larger body" is interpreted to mean the entire corporate organizational chart. Any entity on that chart would then be "affiliated" with any other entity on the chart. Black's definition of affiliate, "a corporation that is related to another corporation by . . . other means of control," is broad. "[O]ther means of control" could mean direct control or indirect control, no matter how minor. While it is unclear whether Talisker

5

Finance controls the four LLCs in any way, certainly some of the listed entities exercise a modicum of control over other entities.  Even Merriam Webster's definition, "closely associated with another[,] typically in a dependent or subordinate position," does not automatically limit "affiliates" to "adjacent entities" here.  While the four LLCs—which are affiliated with Talisker Finance—are lower on the organizational chart than Talisker Finance, they are not adjacent to it.  It is unclear whether they are "dependent" or "subordinate" to Talisker Finance, but that degree of distance cannot be enough to defeat their being "closely associated" with Talisker Finance.

Ultimately, these definitions only do so much to help the court parse through which entities on the corporate organizational chart are affiliated with Talisker Finance.  The definitions are, as the United States points out, quite general.  (ECF No. 75 at 11).  In this case, broader context is key; it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."  Deal v. United States, 508 U.S. 129, 132 (1993).  Even if the dictionaries pointed to a limited construction of "affiliate," because "affiliate" is somewhat of a corporate term of art, it is helpful to note how Defendants have used the term in their corporate parlance.  See Borden v. United States, 141 S. Ct. 1817, 1828 (2021) (citing W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 92 n.5 (1991) (noting that terms of art "depart from ordinary meaning")).

The United States identifies several agreements where the Defendants and other entities on the organizational chart use the word "affiliated" in a broad way, unlike how the Defendants seek to define the word here.  (ECF No. 75 at 17–18).  The Defendants respond by saying that these definitions cannot be the "ordinary meaning" because the ordinary meaning does not need to be defined to be operative.  However, there are other likely reasons that two contracting

6

parties might want to define terms in a contract. For example, they might wish to spell out exactly what the ordinary meaning is to reduce the risk of linguistic disputes. A word's definition in a statute or contract is not automatically at odds with its ordinary meaning. If that were so, courts would consult statutory and contractual definitions for evidence of what the ordinary meaning cannot be.

Furthermore, other statutes and regulations use definitions consistent with the one that the United States is proposing. For example, in its air quality regulations, the EPA defines an "affiliated entity" as "a person who directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the owner or operator of a source." 40 C.F.R. § 66.3(b). SEC regulations employ a nearly identical definition of "affiliate": "[A] person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified." 17 C.F.R. § 230.405. Likewise, both Delaware and Utah corporate law define "affiliate" as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, another person." Del. Code Ann. tit. 8, § 203(c)(1); Utah Code Ann. § 16-10a-102(2). The Defendants seek to characterize these examples as irrelevant, but when analyzing a term of art like "affiliated," it is most logical to read these nearly identical definitions as being consistent with the ordinary meaning—not treat them as outliers.

The common thread in the preceding examples is that an affiliate is any entity that directly or indirectly controls, is controlled by, or is under common control with another entity. Accordingly, the United States proposes this as the ordinary meaning of affiliate, (ECF No. 75 at 19), and the court agrees. Once again, the full definition of "Talisker Affiliate" from the EPA's instructions to UPCM is

> all entities affiliated with Talisker Finance LLC, including Tuhaye LLC, Tuhaye Golf, LLC, Empire Pass Club LLC, Talisker Land Holdings, LLC, and <u>any other entity that is related to Talisker Finance LLC by virtue of shared management or ownership</u>.

(ECF No. 67-1 at 5 (emphasis added)). The Defendants argue that "shared management or ownership" does not mean "common control" (ECF No. 82 at 8), but that is unpersuasive. "Shared" and "common" are synonyms. <u>Bartlett's Roget's Thesaurus</u> (1st ed. 1996) at 729. "Management" and "ownership" are both forms of control. Because "common control" is thus synonymous with "shared management or ownership," and "shared management or ownership" is already part of the EPA's definition of Talisker Affiliate, it is wholly consistent to read any of the definitions referencing "common control" as setting out the ordinary meaning of affiliated.

C. CERCLA's Definition of "Affiliated"

One final reason why the United States' definition of affiliated makes sense is that CERCLA uses a similar definition in one of its provisions. As the Defendants point out, the EPA's instructions state that "[a]ll terms not defined herein shall have their ordinary meaning, unless such terms are defined in CERCLA, 42 U.S.C. § 9601, et seq. . . . , in which case the statutory . . . definitions shall apply." (ECF No. 67-1, at 6). Therefore, if CERCLA defines affiliated on its own, it is unnecessary to divine the word's ordinary meaning.

CERCLA does define affiliated, though it takes a few steps to arrive at a definition. 42 U.S.C. § 9607(p)(1), part of CERCLA, states that "for purposes of this subsection [the "municipal solid waste exemption"], the term 'affiliate' has the meaning of that term provided in the definition of 'small business concern' in regulations promulgated by the Small Business Administration in accordance with the Small Business Act (15 U.S.C. 631 et seq.)."[1] The Small

---

[1] The Defendants, in their reply, claim that the United States "distort[ed] the language of CERCLA" when the United States argued that Small Business Administration regulations provide for the definition of "affiliated." (ECF No. 82 at 5). The quoted language above is found later in § 9607(p)(1).

Business Act permits the Administrator of the Small Business Administration to "specify detailed definitions or standards by which a business concern may be determined to be a small business concern." 15 U.S.C. § 632(a)(2)(A). Those promulgated definitions and standards are found in 13 C.F.R. §§ 121.101 through 121.1103. Of import is 13 C.F.R. § 121.103, aptly titled, "How does SBA determine affiliation?" Subsection (a) details several general principles of affiliation. The pertinent ones are:

> (1) Concerns and entities are affiliates of each other when one <u>controls or has the power to control the other</u>, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists.
>
> (2) SBA considers factors such as <u>ownership, management, previous relationships with or ties to another concern, and contractual relationships</u>, in determining whether affiliation exists.
>
> (3) Control may be affirmative or negative. Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.
>
> (4) Affiliation may be found where an individual, concern, or entity exercises control <u>indirectly through a third party</u>.
>
> (5) In determining whether affiliation exists, SBA will consider the <u>totality of the circumstances</u>, and may find affiliation even though no single factor is sufficient to constitute affiliation.

13 C.F.R. § 121.103(a) (emphases added). The United States identifies Section 121.103(a) in its opposition, (ECF No. 75 at 16), but it cabins this information under its discussion of the use of "affiliated" in the business community. Although Section 9607(p)(1) is not exactly on point here, it nevertheless provides a direct link between CERCLA and Section 121.103(a). And because it is consistent with the ordinary and contextual meaning of "affiliated," the court finds it persuasive.

/ / /

## CONCLUSION

The Defendants must provide all necessary documents and information to the EPA using the following definition of "affiliated":

> Entities are "affiliated" when one entity controls or has the power to control the other, or a third party (or parties) controls or has the power to control both. Control includes management and/or ownership, including through intermediaries, and control may be direct or indirect.

However, on this record, the court cannot answer the specific question of which entities are Talisker Affiliates. The answer will be the entities over which Talisker Finance can exercise direct or indirect control, the entities that can directly or indirectly control Talisker Finance, and any entities under common control with Talisker Finance. These instructions must be interpreted broadly, not narrowly.

## ORDER

For the foregoing reasons, Defendants' motion for clarification (ECF No. 67) is DENIED.

DATED this 30th day of August, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Judge